UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIELD SYSTEM MACHINING, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-cv-301 |
| VESTAS-AMERICAN WIND TECHNOLOGY, INC., | ) Judge John W. Darrah |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Field System Machining, Inc., filed suit against Defendant, Vestas-American Wind Technology, Inc., on January 15, 2013, alleging two counts: a violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*, and a claim of unjust enrichment. Defendant moves to dismiss the action, or, alternatively, to stay the action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 206. For the reasons stated below, Defendant's Motion is granted.

### BACKGROUND

Plaintiff is an Illinois corporation, with its principal place of business in South Elgin, Illinois. (Compl. ¶¶ 1, 7.) Defendant is a California corporation with its principal place of business in Oregon. (*Id.* ¶ 3.) As the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.00, subject matter jurisdiction exists under 28 U.S.C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391(b).

Plaintiff is in the business of providing machining to plants and factories, as well as repairing machining. (*Id.* ¶¶ 7-8.) Defendant is a wind turbine manufacturer and has installed wind turbines throughout the United States and abroad. (*Id.* ¶ 9.)

In December 2010, Defendant contacted Plaintiff about a problem it had with its wind turbines. (*Id.* ¶ 11.) On December 9, 2010, Plaintiff's employees visited one of Defendant's wind farms in Illinois, and on January 21, 2011, Plaintiff's employees visited Defendant's headquarters in Oregon to discuss the problems regarding Defendant's wind turbines. (*Id.* ¶¶ 13-14.) Plaintiff paid the expenses and costs relating to these visits. (*Id.*)

Defendant explained to Plaintiff its approach to repairing its wind turbines ("Crane-Required Repair Process") during these visits. (*Id.* ¶ 15.) Using this Crane-Required Repair Process cost Defendant $165,000 to $200,000 for each repair. (*Id.* ¶ 16.) Plaintiff then developed a confidential, proprietary method of repair ("FSM Solution") for Defendant; the FSM Solution contains trade secrets and confidential information. (*Id.* ¶¶ 18-20.) The FSM Solution creates a cost savings of as much as $170,000 per repair. (*Id.* ¶ 22.)

Plaintiff took measures to protect the secrecy of the FSM Solution. (*Id.* ¶ 21.) By June 7, 2011, Defendant was prepared to move forward with the adoption of the FSM Solution, and Plaintiff sent the confidential and proprietary drawing of the FSM Solution to Defendant "with obligations of confidentiality including the execution of a non-disclosure agreement." (*Id.* ¶ 23.) Thereafter, Defendant began to internally study and examine the FSM Solution and, by November 2011, had confirmed the viability of the FSM Solution. (*Id.* ¶¶ 24-25.)

On November 18, 2011, an engineer for Defendant contacted Plaintiff and requested additional proprietary and confidential information regarding the FSM Solution. (*Id.* ¶ 26.)

Plaintiff "provided all of the requested confidential and proprietary information relating to the FSM Solution to [Defendant] pursuant to its non-disclosure agreement . . . ." (*Id.* ¶ 27.)

Defendant offered to buy the FSM Solution from Plaintiff on December 29, 2011, and Plaintiff declined this offer. (*Id.* ¶ 28.) After this ongoing exchange of information, communication between Defendant and Plaintiff ceased, until May 17, 2012, when Plaintiff contacted an engineer with Defendant and asked, "What ever happened to this project?" (*Id.* ¶¶ 29-30.) Defendant responded that it was pursuing a different solution, whereby Defendant planned to develop its own tool for repairs. (*Id.* ¶ 31.) Plaintiff responded, "If the basis for your tool resembles the proprietary, NDA-protected design we created and submitted to you, I think we have a problem." (*Id.* ¶ 32.) After hearing no further response from Defendant, Plaintiff emailed Defendant, requesting that Defendant "send us the drawing of your machine and your repair procedure (pursuant to the terms of our NDA) for the tool and procedure [Defendant] is developing . . . ." (*Id.* ¶ 33.) Defendant refused to provide Plaintiff more information about the development of its own repair tool. (*Id.* ¶ 34.)

Plaintiff alleges Defendant misappropriated confidential and proprietary information provided to it by Plaintiff in order to create its own internal solution, thereby unjustly enriching Defendant. (*Id.* ¶ 40.) Plaintiff further alleges it provided Defendant "with proprietary and confidential information pursuant to a non-disclosure agreement, which [Defendant] unjustly retained to the detriment of [Plaintiff], and which [Defendant] is unjustly using to its advantage without compensating [Plaintiff]." (*Id.* ¶ 51.)

Defendant moves to dismiss the action with prejudice or, in the alternative, to stay the action, pursuant to the FAA, 9 U.S.C. § 206. The motion has been fully briefed.

## LEGAL STANDARD

The section of the FAA Defendant invokes specifically provides that a court with jurisdiction "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206. The FAA further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 3 of the FAA provides that proceedings must be stayed, and arbitration be compelled, if an issue is arbitrable by the agreement of the parties. 9 U.S.C. §§ 3-4.

"To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts . . . ." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Federal policy favors arbitration.

However, the issue of whether or not the parties agreed to arbitrate an issue is determined by a court. To determine if arbitration is required, "federal courts apply state-law principles of contract formation." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.*

## ANALYSIS

*Applicability of NDA to Plaintiff*

The Seventh Circuit has held that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citing *Venture Associates v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993)). Here, Plaintiff pleads specific allegations regarding a non-disclosure agreement ("NDA") several times in its Complaint, including in its claim for unjust enrichment, where it asserts that Plaintiff provided Defendant with "proprietary and confidential information pursuant to a non-disclosure agreement, which [Defendant] unjustly retained to the detriment of [Plaintiff] . . . ." (Compl. ¶ 51.) Plaintiff fails to attach this NDA to its Complaint, but it is attached to Defendant's Motion to Dismiss. As it appears central to Plaintiff's claims, the NDA will be considered for purposes of ruling on Defendant's Motion.

This NDA was entered into in June 2011 by Vestas Wind Systems A/S ("Vestas A/S") and Plaintiff. Vestas A/S is the parent company of Defendant. The NDA provides that it "shall be governed by and construed exclusively in accordance with Danish law." (NDA ¶ 14.1.) Further, the NDA requires that:

> Any dispute or claim arising from or in connection with the [NDA], or the breach, termination or invalidity thereof, shall be finally settled by arbitration in Copenhagen, Denmark in accordance with the Rules of Procedure of the Danish Institute of Arbitration (Danish Arbitration). The proceeding language shall be in English, unless otherwise agreed between the parties.

(NDA ¶ 14.2.) Additionally, the NDA states that it is "the entire understanding between the parties, superseding all prior communications, agreements and understandings between the Parties with respect to the subject matter of this Agreement." (NDA ¶ 15.1.)

Defendant argues that the NDA is central to Plaintiff's claims and, therefore, the claims raised by Plaintiff are subject to arbitration under the NDA. However, Plaintiff counters that no agreement to arbitrate exists between Plaintiff and Defendant, because the signatories to the NDA were only Plaintiff and Vestas A/S, Defendant's parent company.

Plaintiff's argument regarding the absence of Defendant as a signatory to the NDA is unavailing. Typically, arbitration is not required in any dispute where a party has not agreed to submit to arbitration. *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (*Zurich*) (citations and quotations omitted). "That said, there are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich*, 417 F.3d at 687 (citations omitted). A litigant may enforce an arbitration agreement in situations where traditional principles of state law allow a contract to be enforced against nonparties to the contract through estoppel. *Arthur Anderson LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009). Defendant argues that while it was not a signatory to the NDA, Plaintiff is estopped from avoiding arbitration under the NDA because of the allegations it made in the Complaint. (Def.'s Mem. in Support of Mot. at 8.)

The mere fact of a party not being a signatory to an agreement does not defeat the right to compel arbitration. *Hoffman v. Delotte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001). "There are various methods by which non-signatories may enforce arbitration clauses. As this court has held, an agreement containing an arbitration clause covers non-signatories under common-law contract and agency principles." *Id.* (citing *Messing v. Rosenkrantz*, 872 F. Supp. 539, 540-41 (N.D. Ill. 1995)). Equitable estoppel allows a non-signatory to compel arbitration. *Hoffman*, 143 F. Supp. 2d at 1004. Estoppel may apply when the signatory "[m]ust

6

rely on the terms of the written agreement in asserting its claim against a non-signatory. Thus, when each of a signatory's claim against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." *Hoffman*, 143 F. Supp. 2d 995, 1004-1005 (citations omitted). In this case, Plaintiff, a signatory party, asserts its reliance on the NDA multiple times, demonstrating its reliance on the NDA for protection against misappropriation of confidential information. Plaintiff cannot use the NDA as both a sword and a shield: relying on the NDA to support its claims, but seeking to avoid arbitration by not naming the signatory of the NDA as a defendant in the lawsuit. Plaintiff submits no controlling legal authority in its Response to support its contention that it is not subject to arbitration simply because the named defendant was not a signatory to the NDA. Plaintiff's argument that it should not be subjected to arbitration under the NDA because Defendant is not a signatory is rejected under the theory of estoppel.

*Statutory Claims and the Scope of the NDA*

Plaintiff next opposes Defendant's Motion by arguing that its Complaint asserts two "standalone, independent, pure 'tort' claims that do not have their origin in the cited NDA." (Pl.'s Resp. at 5.) Therefore, Plaintiff reasons, its claims do not flow from a contractual relationship and should not be subject to arbitration under the NDA. This rationale ignores the scope of the NDA, set out in Paragraph 1.

> This Agreement sets forth the rights and obligations of the Parties with respect to the use, handling, protection and safeguarding of Proprietary Information to which the Parties gain access to and/or is disclosed by and between the Parties in connection with the Project.
>
> The recipient Party accepts and agrees that all Proprietary Information is disclosed solely for the purpose of using it in connection with the Project and that

7

> all Proprietary Information which is received by a recipient Party from a disclosing Party shall be used by the recipient Party only in connection with the Project, and shall be protected by the recipient Party in accordance with the terms and conditions set forth below.

(NDA ¶ 1.)

The claims alleged by Plaintiff against Defendant are directly contemplated by the scope of the NDA. The purpose of the NDA was to protect the exchange of information between the parties, and the claims alleged by Plaintiff involve allegations of the misappropriation of this protected information. The NDA provides that "[a]ny dispute or claim arising from or in connection with the Agreement, or the breach, termination or invalidity thereof shall be finally settled by arbitration." (NDA ¶ 14.2.) It is disingenuous for Plaintiff to argue that its claims against Defendant are independent and unrelated to the protections granted by the NDA, particularly considering the facts supporting Plaintiff's claims demonstrate Plaintiff's reliance on the NDA. (Compl. ¶¶ 23, 27, 32-33, 51.) The NDA expressly sought to protect Plaintiff's confidential information, which it claims was improperly misappropriated by Defendant.[1] Nowhere in the NDA does it provide that tortious or statutory claims are excluded from the scope of the Agreement. As the NDA provides that *any* dispute or claim arising from *or in*

---

[1] Plaintiff argues that the "allegations in the Complaint relating to nondisclosure agreements . . . are relevant to the limited purpose of establishing evidence that [Plaintiff], at all times, undertook efforts that were reasonable under the circumstances to protect the FSM Solution as a trade secret as required by the ITSA." (Pl.'s Resp. at 7.) Plaintiff further relies on Illinois law which provides that the existence of a trade secret requires proof of reasonable measures to protect the trade secret. (*Id.*) Therefore, Plaintiff contends, pleading information of nondisclosure agreements as evidence of such precautions is "standard pleading practice in trade secrets litigation." (*Id.*) However, Plaintiff would only be protected from misappropriation of its trade secrets by the NDA if Plaintiff intended that Defendant be bound by the provisions of the NDA.

8

*connection with* the NDA is subject to arbitration, Plaintiff's attempt to characterize its claims as something wholly unconnected to the NDA is futile.

*Disclosure of Other Confidential Information*

Finally, Plaintiff responds to Defendant's Motion by arguing the confidential information it shared with Defendant was provided prior to the execution of the NDA in June 2011. (Pl.'s Resp. at 6.) Thus, Plaintiff contends, its claims pre-date the NDA. (*Id.*) This position fails for two reasons. First, the NDA expressly provides that it "contains the entire understanding between the Parties, superseding all prior communications, agreements and understandings between the Parties with respect to the subject matter of this Agreement." (NDA ¶ 15.1.) Moreover, this position ignores the fact that the purported unjust enrichment and misappropriation of trade secrets appeared to have occurred, at least in part, *after* the execution of the NDA. Accordingly, Plaintiff cannot avoid arbitration on the basis that the disclosure of confidential information occurred prior to the execution of the NDA.

## CONCLUSION

For the reasons set forth above, Defendant's Motion is granted, and the action is stayed, pending the resolution of the arbitration proceeding. This case shall proceed to arbitration pursuant to the terms of the NDA, in accordance with 9 U.S.C. § 206.

Date: May 9, 2013

JOHN W. DARRAH
United States District Court Judge